668 A.2d 948

John Ian **STRATEMEYER**

v.

**STATE of Maryland.**

No. 123, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Dec. 27, 1995.

Stuart L. Alison, Bel Air, for Appellant.

Gary E. Bair, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Joseph I. Cassily,

State's Attorney for Harford County, Bel Air, on the brief), for Appellee.

Argued before WILNER, C.J., and MOYLAN and WENNER, JJ.

WILNER, Chief Judge.

In *Allen v. State*, 91 Md.App. 775, 605 A.2d 994, *cert. denied, State v. Threatt*, 328 Md. 92, 612 A.2d 1315 (1992), we held that the forfeiture of a defendant's motor vehicle pursuant to Md.Code art. 27, § 297, on the ground that the vehicle had been used to transport a controlled dangerous substance, did not constitute a punishment for purposes of Federal or State double jeopardy law and therefore did not preclude the State from prosecuting criminal charges against the defendant arising from the possession of that substance.

We are called upon now to reconsider that holding in the light of several intervening decisions of the United States Supreme Court and the Maryland Court of Appeals. Those decisions convince us that the broad ruling announced and applied in *Allen* is no longer entirely correct. We now conclude that (1) a forfeiture of non-contraband property under § 297—i.e., property other than the unlawful substance or paraphernalia itself—constitutes punishment for purposes of double jeopardy, and (2) whether such a forfeiture either precludes a subsequent criminal action or is precluded by a prior criminal action depends, at least in part, on the respective bases for the forfeiture and the criminal action.

## FACTS

In the summer of 1992, Harford County law enforcement officers began conducting an investigation of appellant for suspected illegal drug activity. As a result of that investigation, the State applied for and, on September 10, 1992, a judge of the Circuit Court for Harford County issued, search and seizure warrants with respect to two residential properties. Those warrants were executed the next day and resulted in (1) the arrest of appellant, and (2) the discovery and seizure of a

pound of cocaine, certain other controlled dangerous substances and paraphernalia, and various documents and records.

Following the execution of the two warrants and based, in part, on some of the items seized, the police applied for and the court issued additional warrants to seize a Chevrolet Corvette, a 1992 Toyota truck, a 1973 Jeep, and a 1981 boat and trailer.[1]  Those warrants were based on probable cause to believe that the items had been purchased with proceeds from the sale of controlled dangerous substances.  The warrants were executed and the property seized.

On October 21, 1992, in an 11–count indictment, appellant was charged with having, on September 11, 1992, imported, distributed, possessed with intent to distribute, and possessed various controlled dangerous substances, including cocaine, as well as having, on that same day, possessed controlled paraphernalia, maintained certain residential property as a common nuisance, and been a drug kingpin.

For various reasons, trial of the criminal case was delayed until January 17, 1995.  In the meanwhile, shortly after the indictment was filed, the State filed a separate civil action to forfeit the Corvette, the Toyota truck, the Jeep, and the boat and trailer.[2]  In each case, the State alleged that the vehicle "was traceable to the proceeds of the alleged cocaine distribution by [appellant]" and that appellant knew or should have known that it was being used "to facilitate the transportation, sale, receipt, possession or concealment of suspected controlled dangerous substances."

The forfeiture case was tried in January, 1994.  We are not privy to the evidence produced at the hearing, as neither a

---

1.  The warrants for the Corvette, the Toyota truck, and the boat were issued on September 11, 1992.  The warrant for the Jeep was not issued until October 21, 1992.

2.  The petitions with respect to the Corvette, the truck, and the boat and trailer were filed on October 23, 1992.  The petition to forfeit the Jeep was filed November 24, 1992.

transcript of testimony nor any exhibits have been included in the record now before us. We know only, from a transcript of the judge's remarks at the conclusion of the hearing, that the court found as fact:

(1) that appellant had no significant employment or source of income other than from dealing in drugs;

(2) that the money used to purchase the boat and trailer "was from the drug activities that he was involved in" and that there was "a clear connection between the Defendant's drug purchase and sale activities with the purchase of this boat";

(3) that the Jeep was transferred to appellant "to satisfy a drug debt";

(4) that the cash used to purchase the Corvette "was from drug activities which he was involved with"; and

(5) that the cash used to purchase the Toyota truck "was related to [appellant's] drug activities and not from any other legitimate source" and, additionally, that the truck "was used after acquisition for drug purchases and/or distribution."

Upon these findings, the court immediately ordered the forfeiture of the boat and trailer, the Jeep, and the Corvette. It held the matter of the Toyota *sub curia* for a time because that vehicle was titled in appellant's girlfriend's name and it was not clear who actually owned it. A month later, however, after giving further consideration to the matter, the court ordered the Toyota forfeited as well.

On January 17, 1995, appellant moved to dismiss the pending criminal charges, arguing that "forfeiture of the aforesaid property is punishment as contemplated by the law and is not remedial" and that "subsequent punishment for the same acts or omissions . . . [is] prohibited by the double jeopardy provisions of the United States Constitution and the Constitution of Maryland." At a hearing on the motion held the same day, appellant relied principally on *Department of Revenue v. Kurth Ranch*, —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), in support of his contention that civil forfeitures are "punishment" within the ambit of double jeopardy.

The court denied the motion. It declared that appellant's reliance on *Kurth* was misplaced, that *Kurth* was a fact-specific case dealing with a "rather bizarre tax scheme," and that the holding and rationale of *United States v. Borromeo,* 995 F.2d 23 (4th Cir.1993),[3] was more applicable to this case. Appellant has taken an immediate appeal from that ruling. *Bowling v. State,* 298 Md. 396, 470 A.2d 797 (1984); *Evans v. State,* 301 Md. 45, 481 A.2d 1135 (1984), *cert. denied, Grandison v. Md.,* 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985) (holding that a denial of a motion to dismiss on double jeopardy grounds is immediately appealable).

## DISCUSSION

### Introduction

Md.Code art. 27, § 297, which is part of the State controlled dangerous substance law, authorizes the forfeiture of certain kinds of property acquired, or used in connection with, or that facilitate the unlawful manufacture, possession, or distribution of controlled dangerous substances. We are concerned here with two categories of such property: (1) vehicles used or intended for use to transport or facilitate the transportation, sale, receipt, possession, or concealment of such substances (subject to forfeiture under § 297(b)(4)), and (2) property furnished or intended to be furnished in exchange for a controlled dangerous substance, including all proceeds traceable to such an exchange (subject to forfeiture under § 297(b)(10)).

---

3. *Borromeo* held that the proportionality analysis espoused in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), does not apply to civil forfeiture actions where the property forfeited was an instrument of the crime. After that decision was filed, the Supreme Court decided *Austin v. U.S.,* 506 U.S. 1074, 113 S.Ct. 1036, 122 L.Ed.2d 347 (1993). In the wake of that opinion, the Court entered a supplemental opinion, *U.S. v. Borromeo,* 1 F.3d 219 (4th Cir.1993), vacating in part its earlier opinion. In the supplemental opinion, the Court held that "[i]n the wake of *Austin,* an inquiry into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order." *Id.* at 221.

■ These provisions mirror, and were largely adopted from, a comparable Federal forfeiture law, 21 U.S.C. § 881(a)(4) and (a)(6). Proceedings to forfeit property under these provisions of State or Federal law are regarded as civil proceedings *in rem. 1986 Mercedes v. State*, 334 Md. 264, 638 A.2d 1164 (1994); *U.S. v. Winston–Salem/Forsyth County Bd. of Educ.*, 902 F.2d 267 (4th Cir.1990).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The Supreme Court has interpreted that clause as protecting against "three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989).[4] *See also State v. Jones*, 340 Md. 235, 666 A.2d 128 (1995).

Appellant did not argue below and does not argue here that either of the first two protections has been violated, so we need not address those aspects. His singular argument is that, because the forfeiture of his property constitutes a punishment already imposed for the offenses now pending against him, placing him in jeopardy of further, criminal

---

4. The prohibition against double jeopardy is also a tenet of Maryland common law. It is well established, however, that the State and Federal protections are to be read harmoniously. As noted in *Thomas v. State*, 277 Md. 257, 267, n. 5, 353 A.2d 240 (1976), and confirmed more recently in *Whittlesey v. State*, 326 Md. 502, 504–05 n. 1, 606 A.2d 225, *cert. denied*, 506 U.S. 894, 113 S.Ct. 269, 121 L.Ed.2d 198 (1992), since *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), first applying the Federal right to State court proceedings, "the Supreme Court decisions are controlling in cases presenting double jeopardy issues." Because the issue raised in this appeal is governed ultimately by Supreme Court decisions interpreting the Fifth Amendment, we shall direct our attention to the Federal provision. The conclusions we reach from that analysis apply equally, however, to the comparable State common law.

sanctions will constitute a transgression of the third protection—against multiple punishment.

As noted, we addressed this same argument in *Allen v. State, supra,* 91 Md.App. 775, 605 A.2d 994. There, as here, a defendant was charged with violations of the controlled dangerous substance laws; prior to trial, his truck, in which the contraband was found, was forfeited; he then sought to have the criminal charges dismissed; and, when the court denied that motion and proceeded to put him on trial and convict him, he cried foul. In rejecting his double jeopardy claim, we started with the fact that forfeiture proceedings under Maryland law are civil in nature. We noted, however, that, in *United States v. Halper, supra,* 490 U.S. 435, 109 S.Ct. 1892, the Supreme Court had rejected the notion that a mere labeling of a sanction as "civil" sufficed to make it non-punitive for double jeopardy purposes and held instead that the character of the sanction and the purpose actually served by it must be examined.

Following that mandate, we determined from earlier pronouncements that the forfeiture law was intended "to curtail and discourage drug use and trafficking" and, quoting from *United States v. Price,* 914 F.2d 1507, 1513 (D.C.Cir.1990), concluded that the remedy is "punitive only insofar as it does not condone the trade in narcotics by permitting persons involved in such trade to retain ill gotten gains." Our ultimate holding, from this analysis, was that "a forfeiture proceeding is a civil action and when brought prior or subsequent to a criminal proceeding does not involve the Double Jeopardy Clause of the Fifth Amendment nor the Maryland common law double jeopardy prohibition." 91 Md.App. at 788, 605 A.2d 994.

Upon further reflection and with the benefit of subsequent pronouncements from the Supreme Court and the Court of Appeals, it appears that our adoption of the statement from *United States v. Price* that forfeiture has only a peripheral punitive effect was not entirely warranted. It has also become apparent that a somewhat broader analysis is required. We

think that the framework set forth in *U.S. v. Ursery*, 59 F.3d 568, 571 (6th Cir.1995), properly distills the questions that ordinarily need to be addressed:

> "To decide whether the government has violated [appellant's] constitutional right this court must make three key determinations: (1) whether the civil forfeiture in the instant case constitutes *"punishment"* for double jeopardy purposes; (2) whether the civil forfeiture and criminal conviction are punishment for *the same offense;* and (3) whether the civil forfeiture and criminal prosecution are *separate proceedings."*

### Punishment

Prior to 1989, the law with regard to whether a particular sanction constituted a punishment for double jeopardy purposes was fairly straightforward. The issue centered more around labels than substance. The determining factor was whether the proceeding leading to the sanction was civil or criminal in nature; if the proceeding was found to be a civil one, the sanction would not constitute a punishment for double jeopardy purposes even if it had some deterrent or retributive purpose or effect. The multiple punishment aspect of the protection against double jeopardy was thought to apply only to *criminal* penalties. *See Johnson v. State,* 95 Md.App. 561, 622 A.2d 199 (1993).

That straightforward and simple analysis ended with *United States v. Halper, supra,* 490 U.S. 435, 109 S.Ct. 1892.

Mr. Halper was employed by a company that provided medical services to Medicare patients. During the course of that employment, he submitted 65 false claims for Government reimbursement, in violation of both a criminal false claims statute (18 U.S.C. § 287) and a civil false claims statute (31 U.S.C. §§ 3729–3731). He was convicted under the criminal Act and sentenced to two years imprisonment and fined $5,000. After the conviction, the Government brought an action against Halper under the civil Act. A person who violates that Act is "liable to the United States Government

430

for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action." 31 U.S.C. § 3729 (1982 ed., Supp. II).

The evidence showed that the aggregate actual loss suffered by the Government from Halper's 65 false claims was $585 (plus the cost of bringing and prosecuting the civil action). Nonetheless, the Government insisted that the statute required imposition of a $2,000 fine with respect to each claim—a total of $130,000—plus an additional fine equal to double the amount of the Government's actual loss. The District Court found that the aggregate fine was so disproportionate to the Government's loss that it constituted punishment for double jeopardy purposes and therefore limited the recovery to double the actual loss—$1,170—plus costs, which the court found to be $16,000.

There was no dispute that Halper had already been punished criminally and that both the criminal and civil proceedings arose from the same conduct. The sole question was whether the statutory civil penalty constituted a second "punishment" for double jeopardy purposes. Relying on earlier pronouncements from the Court, the Government argued that civil penalties do not constitute punishment in that context. The Court responded, first, by declaring that the Government was reading more into the earlier pronouncements than was intended. More significantly, it rejected the mere labeling of a penalty as civil or criminal as determinative, declaring at 447–48, 109 S.Ct. at 1901:

"[T]he labels 'criminal' and 'civil' are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law."

(Citation omitted; footnote omitted.)

The issue, then, is "whether and under what circumstances a civil penalty may constitute punishment for the purpose of

the Double Jeopardy Clause." *Id.* at 446, 109 S.Ct. at 1901. That, the Court said, at 448, 109 S.Ct. at 1901–02, requires "a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." A civil sanction "constitutes punishment *when the sanction as applied in the individual case serves the goal of punishment." Id.* at 448, 109 S.Ct. at 1901–02 (emphasis added). The goals of punishment, the Court continued, were retribution and deterrence; thus, "it follows that a civil sanction that cannot be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* (emphasis added).[5]

The civil sanction at issue in *Halper* was a fixed penalty of money damages. In that context, the Court held that the Government could not impose a criminal penalty, then bring a civil action based on the same conduct, "and receive a judgment that is not rationally related to the goal of making the Government whole." *Id.* at 451, 109 S.Ct. at 1903. The standard announced in *Halper* was essentially one of proportionality, to be judged on a case-by-case basis. The Court expressed the belief that the principle it was announcing was intended "for the rare case ... such as the one before us, where a fixed-penalty provision subjects a prolific but small-

---

**5.** From this language, the Court appeared to be holding that, unless the purpose of the civil sanction was entirely remedial and had no retributive or deterrent purpose, it constituted a punishment. In the very next sentence, however, the Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, *but only* as a deterrent or retribution." *Id.* at 448–49, 109 S.Ct. at 1902 (emphasis added).

We perceive some ambiguity in these two statements: unless the sanction serves only a remedial purpose, it is punishment, but unless it serves only as a deterrent or retribution, it does not constitute jeopardy. What seems unclear is whether a civil sanction that has both remedial and retributive or deterrent purposes constitutes jeopardy. That ambiguity appears to have been cleared up in *Austin v. U.S.,* 506 U.S. 1074, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), discussed *infra,* where the Court stressed the first statement and did not mention the second.

gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 449, 109 S.Ct. at 1902. It stated what it regarded as a rule of reason:

"Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment."

*Id.*

In that particular case, the Court concluded that the fixed penalty of $130,000 was "overwhelmingly disproportionate" to any loss suffered by the Government and could not be sustained. It remanded the case to the District Court to determine more precisely the extent of the Government's costs and expenses and to allow a recovery commensurate with that loss.

*Halper,* of course, did not involve a forfeiture statute; it merely set forth the required analytical framework for determining when a sanction ordinarily regarded as civil in nature may constitute punishment for double jeopardy purposes.

Four years after *Halper,* in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court did examine a civil forfeiture statute, in the context of the Eighth Amendment. Based on evidence that he had sold two grams of cocaine, Austin was convicted in State court of one count of possessing cocaine with intent to distribute, for which he was sentenced to seven years in prison and fined $5,000. A month later, the Government, acting under a Federal forfeiture statute (21 U.S.C. § 881), filed an action to forfeit Austin's auto body repair shop (where he made the deal to sell the cocaine) and his nearby mobile home (where he had apparently stored the cocaine). The District and Circuit courts, rejecting a proportionality analysis based on the "Excessive Fines" clause of the Eighth Amendment, entered and affirmed a judgment for the Government.

The Supreme Court began by observing that, unlike some of the other provisions in the Bill of Rights, there was no language in the Eighth Amendment limiting its proscriptions to criminal cases. Citing *Halper,* the Court confirmed that civil proceedings may advance punitive and remedial goals. It observed, in that regard, at ——, 113 S.Ct. at 2806:

> "In considering this question, we are mindful of the fact that sanctions frequently serve more than one purpose. We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause. We, however, must determine that it can only be explained as serving in part to punish. We said in *Halper* that 'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' ... We turn, then, to consider whether, at the time the Eighth Amendment was ratified, forfeiture was understood *at least in part* as punishment and whether forfeiture under [the statute] should be so understood today."

(Emphasis added.)

After examining the nature of forfeitures under English and early American law, the Court concluded that, historically, even with the fiction that the property itself is the guilty entity, forfeiture "serves, at least in part, to punish the owner," and that, as a result, "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." *Id.* at ——, 113 S.Ct. at 2810. The Court then reviewed the legislation at issue (§ 881) and found that the legislative history "confirms the punitive nature of these provisions." Thus, quoting a second time from *Halper,* the Court held:

> "Fundamentally, even assuming that §§ 881(a)(4) and (a)(7) serve some remedial purpose, the Government's argument must fail. '[A] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent pur-

poses, is punishment, as we have come to understand the term.' *Halper*, 490 U.S., at 448 [109 S.Ct., at 1901–02] (emphasis added). In light of the historical understanding of forfeiture as punishment, the clear focus of [§ 881] on the culpability of the owner, and the evidence that Congress understood those provisions as serving to deter and to punish, we cannot conclude that forfeiture under [§ 881] serves solely a remedial purpose. We therefore conclude that forfeiture under these provisions constitutes 'payment to a sovereign as punishment for some offense' . . . and, as such, is subject to the limitations of the Eighth Amendment's Excessive Fines Clause."

*Id.* at ——, 113 S.Ct. at 2812 (footnote omitted).[6]

In making these pronouncements, the Court declined to adopt the *Halper* standard of determining whether the sanction was remedial in nature by looking at proportionality on a case-by-case basis, examining whether the value of the item forfeited in the particular case bore any reasonable relation to the cost or loss to the Government. By their very nature and intent, the Court held, forfeitures under § 881(a)(4) or (a)(7) were punitive. In making that determination, the Court expressly rejected the Government's arguments that forfeiture of property other than the contraband itself was remedial in that it simply removed illegal items from society and that forfeitures could be viewed as a form of liquidated damages.

---

**6.** The Court's Opinion was authored by Justice Blackmun and was joined in by Justices White, Stevens, O'Connor, and Souter. Justice Scalia filed a concurring opinion in which he too concluded that the forfeiture "must be considered, in whole or in part . . . punitive. Its purpose is not compensatory, to make someone whole for injury caused by unlawful use of the property. Punishment is being imposed, whether one quaintly considers its object to be the property itself, or more realistically regards its object to be the property's owner." Justice Kennedy, the Chief Justice, and Justice Thomas also concurred in the judgment. They desired to leave open whether forfeiture could be considered a personal punishment in a situation where the owner is entirely innocent, but they expressed no disagreement with the Court's conclusion where the owner was himself culpable. That conclusion was therefore a unanimous one.

*See* discussion in *Aravanis v. State,* 339 Md. at 656 n. 10, 664 A.2d 894 (1995).

The third case in the Supreme Court trilogy—the one specifically rejected as distinguishable by the trial court here—is *Department of Revenue v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), which raised the question "whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense." *Id.* at ——, 114 S.Ct. at 1941.

The Kurths were raising marijuana on their ranch. Upon discovery of that illicit activity by the police, they were charged and convicted of either criminal conspiracy or possession and given deferred or suspended sentences. The State filed suit to forfeit both cash and items of equipment used to grow the marijuana; that suit was settled with an agreement to forfeit $18,000 in cash and certain equipment. The State then assessed against the Kurths a tax totaling nearly $900,-000 under a statute imposing a tax on dangerous drugs. As a result, the Kurths declared bankruptcy. In the Bankruptcy Court, the issue was raised whether the imposition of that tax constituted an impermissible punishment under the Double Jeopardy Clause. That court and the Court of Appeals for the Ninth Circuit held that it did.

The Supreme Court affirmed. The Court began by noting that a tax—even a very high tax, as this one was—is not necessarily a punishment. This tax was different, however, for at least two reasons: first, it was conditioned on the commission of a crime and was exacted only after the taxpayer was arrested for the precise conduct underlying the tax; and second, though facially a property tax, it was levied on goods that the taxpayer neither owned nor possessed when the tax was levied. The marijuana upon which the tax was based had been confiscated and destroyed by the State. Conclusion: "Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at 1948.

We agree with the circuit court that *Kurth Ranch* is a fact-specific case with no precedential value on the facts now before us. *Halper* and *Austin*, however, are very much in point. Even more in point is *Aravanis v. State*, 339 Md. 644, 664 A.2d 888 (1995), where the Court of Appeals, following *Austin*, held that the Maryland forfeiture law—Md. Code art. 27, § 297, the statute now before us—was a punitive statute for purposes of the State analog to the Eighth Amendment—Maryland Declaration of Rights, art. 25.

When one puts these two lines of cases together, an inescapable conclusion emerges. *Halper*, as clarified in *Austin*, establishes that, if a civil penalty or sanction has any punitive aspect to it, it constitutes punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment. *Austin* mandates and *Aravanis*, 339 Md. 644, 664 A.2d 888, directly holds that a forfeiture under art. 27, § 297 constitutes punishment for purposes of at least the Maryland counterpart to the Excessive Fines clause of the Eighth Amendment, if not the Federal provision itself.[7]

■ Upon this reasoning and upon the specific pronouncements of the Supreme Court and the Court of Appeals, we reject the State's argument that a forfeiture of non-contraband property under § 297 may constitute punishment under the Eighth Amendment but not under the Double Jeopardy Clause of the Fifth. The most telling fallacy in that argument under the current case law is the fact that "the Supreme Court used *Halper*'s definition of 'punishment' under the Double Jeopardy Clause to define 'punishment' for purposes of the Eighth Amendment." *State v. Jones, supra*, 340 Md. at 245, 666 A.2d 128. *See also United States v. Ursery, supra*, 59 F.3d 568; *United States v. Perez*, 70 F.3d 345 (5th Cir.1995); *U.S. v. $405,089.23 U.S. Currency*, 33 F.3d 1210 (9th Cir.1994). We hold, therefore, that a forfeiture under § 297(b)(4) and (b)(6) constitutes punishment for double jeopardy purposes and declare that anything to the contrary said in *Allen v.*

---

7. *See* discussion in *Aravanis*, 339 Md. at 657 n. 10, 664 A.2d 888, as to whether the Excessive Fines Clause applies to the States.

*State, supra,* 91 Md.App. 775, 605 A.2d 994, is hereby over-ruled.

### Same Offense

The Double Jeopardy Clause protects against multiple punishments for *the same offense.* The issue of whether a person is being subjected to multiple punishment for the same offense can arise in a number of different contexts. There are, however, at least two *a priori* considerations. First, is the defendant being subjected to multiple punishment for the same conduct? If a person unlawfully shoots and kills A on Monday and then, on Tuesday, unlawfully shoots and kills B, each crime may be punished separately. No valid claim can be made that the two punishments constitute a prohibited multiple punishment for the same offense; the two homicides, even though perhaps constituting the same crime, are not the same offense because they did not arise from the same conduct.

■ The second consideration comes into play when the defendant is subjected to punishment for two or more offenses that do arise from the same conduct or course of conduct. The question then becomes whether, for double jeopardy purposes, the facially separate offenses become one. That, of course, is the more common situation, and the issue is ordinarily resolved by applying first the "required evidence" or common elements test—determining whether "each offense contains an element not contained in the other." *United States v. Dixon,* 509 U.S. 688, ——, 113 S.Ct. 2849, 2851, 125 L.Ed.2d 556 (1993); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *Snowden v. State,* 321 Md. 612, 583 A.2d 1056 (1991). If merger or dismissal is not mandated under that test, other tests may also be examined and applied in certain circumstances, at least under Maryland law. *See Monoker v. State,* 321 Md. 214, 582 A.2d 525 (1990).

■ It appears from the record before us that we could conceivably have both situations here. As noted, the court

ordered forfeiture of the boat and trailer, the Jeep, and the Corvette solely on the basis that they were acquired with funds obtained by appellant through illicit drug activities, i.e., under § 297(b)(10). The forfeiture of those items, in other words, did not rest, even in part, on a finding that they were actually used in transporting or storing controlled dangerous substances or paraphernalia, much less any of the substances or paraphernalia underlying the instant criminal charges. It is undisputed that those vehicles were acquired by appellant before September 11, 1992. It is evident, then, that the conduct that formed the basis of the forfeiture of those items was not at all the same conduct that forms the basis of the current criminal charges. To the extent that those vehicles were acquired with, or directly constituted, the proceeds of illicit trafficking in controlled dangerous substances, none of that trafficking was alleged to involve, or could possibly involve, any of the substances or paraphernalia that form the basis of the pending criminal charges. Those charges, as we have indicated, are based on substances and paraphernalia acquired, imported, possessed, or distributed on September 11, 1992. Accordingly, as to those items, the forfeiture cannot constitute a multiple punishment for the same offense.

We are left, then, with the Toyota truck, as to which the court stated:

> "I would find from the evidence that the cash that [appellant] used to put down was related to his drug activities and not from any other legitimate source. And would find also that the vehicle, from the evidence presented, was used after acquisition for drug purchases and/or distribution. So for two reasons the Court is inclined to order forfeiture."

The truck was purchased by appellant in January, 1992, and, as with the other forfeited items, could not have been acquired as the result of any conduct upon which the criminal charges are based. As we indicated, none of the evidence presented at the forfeiture hearing is in the record before us, so, with respect to the alternate ground relied on by the court, we do not know whether the truck was used to acquire, transport, store, or distribute any of the drugs imported,

possessed, or distributed by appellant on September 11, 1992. There was certainly no such finding by the court, either when it ordered the forfeiture or when it denied appellant's motion to dismiss the criminal charges.

Double jeopardy is a defense in bar, raised by the defendant through an appropriate motion. *State v. Garner,* 90 Md.App. 392, 399, 601 A.2d 142 (1992); *Harris v. State,* 94 Md.App. 266, 278, 617 A.2d 610 (1992), *cert. denied,* 330 Md. 319, 624 A.2d 490 (1993); Md.Rule 4–252. It is not an automatic defense; the court must, upon evidence, determine whether a prior jeopardy occurred and whether the offenses in question constitute the same offense. *Harris v. State,* 94 Md.App. at 278, 617 A.2d 610. If the court makes such a determination and, on appeal, the defendant urges that the court erred, it is incumbent on the defendant to produce a sufficient record for the appellate court to decide that issue. If the record does not suffice to establish the error, there is no basis for a reversal. That is the situation here. There is nothing in the record to indicate that the Toyota was used in connection with any of the substances or paraphernalia forming the basis of the criminal charges.

For these reasons, we conclude that, while the forfeitures in question constituted punishment, there is no evidence in this record from which we could conclude that they constituted a punishment for the same offense. Accordingly, we do not need to address the third question set forth in *United States v. Ursery, supra,* 59 F.3d 568, of whether the proceedings are the same, and shall affirm the order denying appellant's motion to dismiss the pending criminal charges.

ORDER DENYING MOTION TO DISMISS AFFIRMED; APPELLANT TO PAY THE COSTS.