681 A.2d 1206

**Tyrone PRICE**

v.

**STATE of Maryland.**

**No. 2033, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Sept. 4, 1996.

488

**490**

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before FISCHER, DAVIS and HARRELL, JJ.

DAVIS, Judge.

This is an appeal from a jury trial held in the Circuit Court for Prince George's County (Sothoron, Jr., J.) on September 6, 1995, at the conclusion of which appellant, Tyrone Price, was found guilty of carjacking and of theft of property valued at more than $300. On December 8, 1995, the trial court sentenced appellant to fifteen years incarceration, five years suspended, for the carjacking conviction and to a one-year term, to be served concurrently, for the theft conviction. Appellant presents the following questions for our review:

  I.    Is the evidence sufficient to support appellant's conviction for carjacking?

  II.   Did the trial court's imposition of a separate sentence on the theft conviction result in an illegal sentence, since theft is a lesser-included offense of carjacking?

## FACTS

On February 13, 1995, after arranging to have a mini-storage facility near the Landover Metro Station outside of Washington, D.C. remain open until 11:00 p.m., Valores Evans drove to the facility in her 1990 Ford Probe at approximately 10:50 p.m. When Evans arrived at the front gate of the storage facility, it was locked. Evans blew her vehicle's horn in an attempt to gain an employee's attention. When that did not work, Evans got out of her car, walked toward the fence, and shouted for either one of the two men who earlier in the day had agreed to meet her at the facility. Still, there was no response from inside the gates.

Evans's shouts did, however, rouse some unwanted attention. Appellant approached Evans with his hand at his waist and said, "Shut up, bitch." Evans turned around, realized her situation, and said, "Oh, please don't shoot me" and ran away from the car, eventually falling to the ground. Appellant then took Evans's vehicle and drove away.

In the early morning hours on February 14, 1995, Officer Peter Woodburn of the Metropolitan Police observed Evans's 1990 Ford Probe driving on Stanton Road in Southeast Wash-

ington, D.C. at a high rate of speed and running multiple red lights. Officer Woodburn pulled up behind the vehicle and turned on his lights and siren. The vehicle then increased its speed and attempted to evade capture. Less than five minutes later, the 1990 Ford Probe ran into a fence and came to a stop. The driver alighted from the vehicle and ran from the officer. Officer Woodburn chased the driver, but eventually lost sight of him for about ten to fifteen minutes, until another officer, Dennis Spalding, who responded to Officer Woodburn's call for help, found appellant lying face down behind a retaining wall surrounding a patio. Officer Woodburn identified appellant as the driver at that time and again in court.

Ten days later, on February 24, 1995, Evans was asked by Detective Darren Palmer to come to the police station. While there, Evans identified appellant's picture in approximately twenty seconds from six presented to her in a photo array. Evans also made an in-court identification of appellant as her attacker. At the conclusion of the trial, the jury convicted appellant of both counts. From that conviction, appellant now appeals.

## DISCUSSION

## I

### EVIDENCE OF INTIMIDATION OR THREAT OF FORCE

Appellant contends that the trial court erred when it denied his motion for judgment of acquittal made at the end of his trial because the State failed to produce sufficient evidence to sustain his conviction. Appellant asserts that the State's case was fatally flawed in two ways: (1) the prosecution failed to produce evidence demonstrating that appellant used force or threat of force to effect the carjacking; and (2) the prosecution failed to show that the car was in Evans's "actual" possession at the time appellant allegedly carjacked it. Appellant argues that each of these facts must be proven beyond a

reasonable doubt to sustain a conviction for carjacking pursuant to MD. ANN.CODE art. 27, § 348A (1993).

MARYLAND ANNOTATED CODE art. 27, § 348A (1993), created the statutory crime of carjacking and established its elements as follows:

An individual commits the offense of carjacking when the individual obtains unauthorized possession or control of a motor vehicle from another individual *in actual possession* by force or violence, *or by putting that individual in fear through intimidation or threat of force or violence.*

(Emphasis added). As appellant notes, no evidence was produced at trial to suggest that appellant used actual force to carjack Evans's automobile. Hence, in order to convict appellant, the jury necessarily found that he took the car by putting Evans in fear through intimidation or threat of force or violence. Appellant asks that we reverse his conviction in part because he argues that there was insufficient evidence to support such a finding.

■ At the outset, appellant only claimed that there had been presented no evidence "of force or threat of force," rather than that the evidence offered was insufficient. By failing to particularize his objection, he denied the trial court the opportunity to consider and decide the merits of the claim pursuant to MD. RULE 8–131. Consequently, he has technically waived objection to the sufficiency claim. *See State v. Lyles,* 308 Md. 129, 135, 517 A.2d 761 (1986); *Ford v. State,* 90 Md.App. 673, 692, 603 A.2d 883 (1992), *aff'd,* 330 Md. 682, 625 A.2d 984 (1993); *Ford v. State,* 90 Md.App. 673, 692, 603 A.2d 883 (1992), *aff'd,* 330 Md. 682, 625 A.2d 984 (1993).

Notwithstanding appellant's failure to preserve the issue for review, he acknowledges that when this Court reviews a criminal appellant's contention that the State failed to produce sufficient evidence to support his or her conviction, our review is limited in nature. As this Court recently noted in *Matthews v. State,* 106 Md.App. 725, 666 A.2d 912 (1995),

The standard for our review of the sufficiency of the evidence is whether after viewing the evidence in the light

most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 743, 666 A.2d 912 (citations omitted). Hence, we shall reverse appellant's conviction only if no rational trier of fact could have concluded that appellant took Evans's car by putting her in fear through intimidation or threat of force or violence.

■ In the case *sub judice*, the State produced sufficient evidence from which a rational trier of fact could have found that Evans was in fear at the time appellant carjacked her automobile. As Evans was attempting to gain entry to the storage facility, appellant walked up behind her and stated, "Shut up, bitch." When he said this, according to Evans's testimony, one of appellant's hands was near his waist and, as a result, she believed he had a gun. In fact, Evans stated that appellant's order "frightened [her]" and that she believed appellant was going to shoot her. Because Evans was actually in fear at that time, she ran away and appellant was able to take her car.

Appellant argues that it was unreasonable for Evans to have been in fear merely because he said, "Shut up, bitch," and had one arm by his waist. We disagree. Evans was by herself at approximately 10:50 p.m. and was accosted in a threatening manner. Appellant asserts that his statement, "Shut up, bitch," was no more than an admonition to Evans to stop yelling and implied nothing else. To the contrary, this comment, by itself, under these circumstances would be enough to cause the average person to be put in fear.

### *ACTUAL POSSESSION UNDER § 348A*

Appellant chronicles the sordid events that spawned the legislation in the 1993 Session of the General Assembly involving the tragic death of Pamela Basu at the hands of Rodney Solomon and Bernard Miller. In his brief, appellant refers to the enactment of § 348A in the 1993 Session of the General Assembly "in response to the alarming escalation of armed

hijacking of vehicles" and specifically as a result of the case of Pamela Basu who was dragged to her death when her arm became entangled in the vehicle's seatbelt after defendants Rodney Solomon and Bernard Miller forcibly took her car and drove away with her daughter in the backseat. Appellant observes in his brief that Steven B. Larsen of the Governor's Legislative Office testified to 445 carjacking incidents within the first nine months of 1992, in which twelve people were seriously injured or killed and that thirty-nine others received minor injuries. He also references the statement of Myron V. Wotring, Governmental Relations Officer of Anne Arundel County, in support of Senate Bill 339, referring to the terror of the victim "being ordered out of one's vehicle at gun point."

The testimony of Larsen, speaking for the Governor's Legislative Office, set forth in appellant's brief, included the observation that the "death of Pamela Basu in Howard County during a carjacking demonstrated the brutal dangers associated with the theft of an *occupied motor vehicle.*" Larsen's testimony concluded that "the automobile can no longer be considered a safe haven." According to appellant, the amendment to the bill "indicates clearly that the legislature intended that the statute apply to thefts of *occupied* vehicles."

At the outset, appellant's principal argument regarding actual possession is that the language of the statute was intended only to apply to a victim seated within the interior of the vehicle at the point when it is commandeered. This contention is based on the premise that the legislation was intended to apply only to "occupied vehicles." This argument is akin to, but slightly different from, the assertion that the victim was several feet from the vehicle at the time the car was driven away, a circumstance which resulted because the victim fled in fear of her assailant. Where the victim was when the assailant drove off with her car need not detain us long because whether the victim fled after being accosted while inside her car or, in the alternative, next to the hood, the result is the same. In either event, the vehicle would have been commandeered when the victim was initially accosted by

appellant not at the point in time when she had fled some distance from the vehicle. Consequently, that appellant drove off at a point in time when there existed some distance between where the victim was and the point from which the car was driven away is of no moment. Her flight was the result of fear generated by the actions of appellant.

Turning to the question of whether the legislature intended the statute only to apply to "occupied vehicles," appellant stresses the legislative history in an attempt to discern the intent of the legislature. The goal of statutory construction is to ascertain and effectuate the legislative intent. *Jones v. State*, 336 Md. 255, 260, 647 A.2d 1204 (1994); *Mustafa v. State*, 323 Md. 65, 73, 591 A.2d 481 (1991). To determine legislative intent, the reviewing court looks "first to the words of the statute, read in light of the full context in which they appear and in light of external manifestations of intent or general purpose available through other evidence." *Richmond v. State*, 326 Md. 257, 262, 604 A.2d 483 (1992), quoting *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126 (1989). In so doing, the court gives the language of the statute its ordinary and common meaning. *Richmond*, 326 Md. at 262, 604 A.2d 483. Moreover, statutory language is analyzed from a "commonsensical" rather than a technical perspective, with the reviewing court seeking to avoid giving the statute a strained interpretation or one that reaches an absurd result. *Id.*; *Dickerson v. State*, 324 Md. 163, 171, 596 A.2d 648 (1991). It is axiomatic that the cardinal principle of statutory interpretation is that the words of the statute must be accorded their ordinary meaning. *Condon v. State*, 332 Md. 481, 491, 632 A.2d 753 (1993); *Reisch v. State*, 107 Md.App. 464, 480, 668 A.2d 970 (1995).

In that regard, it is significant that the statute itself refers to an individual obtaining unauthorized possession or control "from another individual in actual possession by force or violence." Nowhere does the statute refer to an "*occupied* motor vehicle." In an attempt to equate Evans's possession of her vehicle as constructive, appellant cites *Nutt v. State*, 9

Md.App. 501, 508, 267 A.2d 280 (1970) (holding that a conviction for control of a narcotic drug is duplicitous with one for constructive possession) and *Cable v. State,* 65 Md.App. 493, 498, 501 A.2d 108 (1985) (holding that the possession of a ticket for a briefcase was tantamount to possession of the briefcase itself). Admittedly, the language of § 348A does not contemplate constructive possession nor must we consider such an interpretation. Appellant asserts "a victim who is not in the car is not in 'actual' possession of it; she possesses the car constructively." We disagree.

When accosted by appellant, Evans was positioned outside of her car along side of the hood. It matters not that, once Evans ran away from the car and fell in reacting to being accosted by appellant, as appellant indicates "at that time she was no longer near the car." The subjugation of Evans to intimidation or threat of force or violence occurred at the point in time when Evans was in the proximity of the hood of her car. In arguing an insufficiency of force, violence, threat, or intimidation, citing *West v. State,* 312 Md. 197, 202, 539 A.2d 231 (1988), appellant analogizes carjacking with robbery. Indeed, it may be argued that carjacking under § 348A is little more than the robbery of a motor vehicle without the requirement of proving the offender's specific intent permanently to deprive the owner of his or her property.

The intent of the legislature was to proscribe actions which although already crimes, i.e., robbery, were deemed to be of such an aggravated nature as to require specific legislation and punishment. *See* Bill Analysis, Senate Bill 339, Senate Judicial Proceedings Committee, Testimony of Steven B. Larsen before Senate Judicial Proceedings Committee.

Although Maryland cases considering whether a defendant is in possession of illegal drugs have imposed criminal responsibility when, because of proximity or control, a defendant can be said to be in constructive possession, decisions involving the unauthorized asportation in a robbery context speak in terms of whether the property was taken from the person or in his

presence. The Court of Appeals said, in *Foster v. State,* 297 Md. 191, 213, 464 A.2d 986 (1983):

> The accused contends that the evidence was insufficient to sustain her conviction for felony murder because there was insufficient evidence to establish an element of the underlying felony of robbery—that the property taken was taken from the victim's "presence." Although this Court has recognized that robbery involves "the felonious taking and carrying away of the personal property of another from his person or in his *presence* by the use of violence or by putting him in fear," *Hadder v. State,* 238 Md. 341, 354, 209 A.2d 70, 77 (1965) (emphasis added), we have not previously considered the scope of the term "presence."

> Courts in other jurisdictions that have considered the scope of the term generally agree that "presence" involves proximity and control.... Indeed, courts and commentators have described "presence" as requiring that the property taken must have been close enough to the victim and sufficiently under the victim's control that, *had the latter not been subject to violence or intimidation by the robber, he could have prevented the taking.*

(Emphasis added.)

The *Foster* court went on in succinctly reiterating the principle by citing *Commonwealth v. Homer,* 235 Mass. 526, 533, 127 N.E. 517, 520 (1920):

> A thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it.

■ In a possessory crime or one in which control or dominion over contraband or the instrumentality of the crime constitutes, or is an element of, the *actus reus,* the law engages in the legal fiction of constructive possession to impute inferentially criminal responsibility when the actor would be expected to disclaim ownership or control in order to avoid criminal responsibility. In permitting the inference of control or dominion over an instrumentality of crime, exam-

ples of factors that we have recognized to establish the nexus are the proximity between the defendant and the contraband and the fact that the contraband was within the view or otherwise within the knowledge of the defendant. *See Folk v. State,* 11 Md.App. 508, 518, 275 A.2d 184 (1971).

When one is charged with carjacking, we are not concerned with the victim's dominion and control over the vehicle except insofar as such possession is interrupted by an act of intimidation or violence on the part of an actor bent on wresting possession from the operator of the vehicle. In other words, the *actus reus* of carjacking has nothing to do with the possession by the victim of the vehicle. The only significance of the relationship between the victim and the vehicle at the time of the carjacking is in permitting a determination of whether the actor perpetrated a crime against person, i.e., carjacking, or a crime against property, i.e., theft. Such a distinction is no different from the distinction to be made between theft and robbery when, as an example of the former, a pickpocket simply removes a wallet without the victim's knowledge from his back pocket or, as in the latter, when a mugger forcibly wrestles a shoulderbag or pocketbook from the victim's grasp. Thus, we are concerned here not with imputing criminal responsibility, but rather with whether the defendant's actions constituted forcible taking of the vehicle or a simple theft thereof. Under the circumstance here extant, it is clear that pursuant to the language in *Foster v. State, supra,* citing *Commonwealth v. Homer, supra,* the vehicle was so within the victim's reach, inspection, observation and control, that she could have, "if not overcome by violence or prevented by fear, [have] retain[ed][her] possession of it."

In *Hartley v. State,* 4 Md.App. 450, 243 A.2d 665 (1968), *cert. denied,* 395 U.S. 979, 89 S.Ct. 2136, 23 L.Ed.2d 768 (1969), we held that the office manager of a company was in actual possession of the money stolen when money for which he was responsible was taken from an office where he was present. *Id.* at 465, 243 A.2d 665. Nothing in the legislative history or language of § 348A suggests that "actual possession" means anything different here than it means in the

robbery context. Consequently, Evans was in actual possession of her car when appellant caused her to flee by putting her in fear through the intimidating acts of accosting her at 10:50 in the evening, placing his hand at his waist indicating he had a gun, and ordering her to, "Shut up, bitch."

As we observed in *Mobley v. State,* 111 Md.App. 446, 455–456, 681 A.2d 1186 (1996):

Put another way, the victim need not actually be seated in, or operating the vehicle in order for a carjacking or attempted carjacking to be consummated. Rather, the victim need only be entering, alighting from, or otherwise in the immediate vicinity when an individual obtains unauthorized possession or control of the vehicle by intimidation, force, or violence, or by threat of force or violence. Finally, the victim's right to the vehicle need be only superior to that of the perpetrator in order for a carjacking or an attempted carjacking to have occurred.

(Footnote omitted.)

## II

Appellant also contends that the trial court erred when it imposed a separate sentence for the theft conviction because, appellant argues, theft is a lesser included offense of carjacking. Hence, appellant asserts that the double jeopardy bar required the theft conviction to merge with the carjacking conviction for sentencing purposes. Appellant is wrong.

■ The short answer to appellant's contention is to be found in the statute itself, which provides in § 348A(d) that "the sentence imposed under this section may be imposed separate from and consecutive to a sentence for any other offense arising from the conduct underlying the offenses of carjacking or armed carjacking."

■ To be sure, the required evidence test announced in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), is the test to be applied in determin-

ing whether certain convictions should be merged for purposes of sentencing. The "required evidence test" states that,

> if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each ... offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts.

*State v. Lancaster*, 332 Md. 385, 391, 631 A.2d 453 (1993) (citations omitted) (quotations omitted). *See also Stratemeyer v. State*, 107 Md.App. 420, 437, 668 A.2d 948 (1995).[1] In the case *sub judice*, appellant asserts that all of the elements of theft are included in the crime of carjacking. Before reaching that point, as we have indicated, the General Assembly made it clear that sentences separate and apart from any other offense are permitted under § 348A. Addressing the right of the legislature to express its will, the Court of Appeals in *Whack v. State*, 288 Md. 137, 143, 416 A.2d 265 (1980) said:

> The imposition of multiple punishment, however, is often particularly dependent upon the intent of the Legislature. Just last year in *Brooks v. State, supra*, 284 Md. at 423, 397 A.2d 596, it was pointed out that, although the required evidence test is the normal standard for deciding the allowability of separate sentences, the Legislature may not in certain circumstances intend that separate sentences be imposed for two offenses growing out of the same transaction, even though the two offenses are clearly distinct under the required evidence test. *On the other hand, as recognized in Newton v. State, supra, 280 Md. at 274 n. 4, 373*

---

1. Disapproved on other grounds in *One 1984 Ford Truck VIN # 1FTCF15F1ENA87898 v. Baltimore County*, 111 Md.App. 194, 681 A.2d 527 (1996) and *Jones v. State*, 111 Md.App. 456, 681 A.2d 1190 (1996).

*A.2d 262, even though two offenses may be deemed the same under the required evidence test, separate sentences may be permissible, at least where one offense involves a particularly aggravating factor, if the Legislature expresses such an intent.*

(Emphasis added.)

The *Whack* Court went on ultimately to conclude

The Legislature's concern about the use of a weapon to intimidate a robbery victim, and its additional concern when that weapon is a handgun, is certainly not unreasonable. When it expressly shows an intent to punish, under two separate statutory provisions, conduct involving those aggravating factors, the Fifth Amendment's double jeopardy prohibition has not heretofore been regarded as bar.

Thus, even when the required evidence test would normally preclude multiple punishment for the same offense, when the legislature specifically permits it because of aggravating circumstances, it will not be deemed to be a violation of the Fifth Amendment.

Answering appellant's contention directly, however, the elements of carjacking are as follows:

An individual commits the offense of carjacking when the individual obtains unauthorized possession or control of a motor vehicle from another individual in actual possession *by force or violence, or by putting that individual in fear through intimidation or threat of force or violence.*

MD. ANN.CODE art. 27, § 348A (1993) (emphasis added). Theft, on the other hand, requires

[a] person ... *willfully or knowingly obtains control which is unauthorized or exerts control which is unauthorized* over property of the owner, and:

(1) Has the purpose of depriving the owner of the property; or

(2) Willfully or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property; or

(3) Uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

MD. ANN.CODE art. 27, § 342 (1995) (emphasis added). It is clear that the two crimes require distinct elements for conviction. Carjacking requires force, violence, intimidation, threat of force, or violence, which not only is not required under the theft statute, but which would elevate the conduct to robbery rather than theft. Pursuant to the carjacking statute, once unauthorized possession or control of the vehicle is obtained through force or threat of force, the attendant circumstances are immaterial. In fact, the language of the statute requires nothing more than obtaining the unauthorized possession and control, but does not require that there be any asportation or removal of the vehicle for criminal responsibility to attach. Indeed, § 348A(e) specifically provides that one charged under the statute may not interpose the defense that there was no intent permanently to deprive the owner of his or her property.

Theft, on the other hand, requires proof of circumstances that would indicate the offender's intent permanently to deprive the owner of his or her property whether by way of appropriating it to one's own use or concealment or abandonment in such a manner as to deprive the owner of the property. Applying the required evidence test under such circumstances clearly demonstrates that the legislature, both because of the aggravating circumstances so indicated and because of the separate and distinct nature of the elements of the offenses, was justified in making separate punishments permissible.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**