681 A.2d 1186

**Ricky MOBLEY**

v.

**STATE of Maryland.**

**No. 1981, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Sept. 3, 1996.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Kathryn Grill Graeff, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Marna McLendon, State's Atty. for Howard County, Ellicott City, on the brief), for Appellee.

Submitted before WENNER and HOLLANDER, JJ., and JOHN J. BISHOP, J. (retired), Specially Assigned.

WENNER, Judge.

Appellant, Ricky Mobley, was convicted at a bench trial in the Circuit Court for Howard County of armed carjacking, attempted armed carjacking, robbery with a deadly weapon, attempted robbery with a deadly weapon, use of a handgun in the commission of a felony, use of a handgun in the commission of a crime of violence, two counts of assault, and felony theft. After having been sentenced to a total of thirty-five years of imprisonment, ten to be served without possibility of parole, appellant noted this appeal, presenting us with but two questions, which we have edited for clarity:

I.    Did the trial court err in denying his motion to suppress?

II.   Was there sufficient evidence to support his convictions for armed carjacking and attempted armed carjacking?

Finding no error, we shall affirm the judgments of the circuit court.

### Facts

The victims, Michelle Rudy and Kallie Hajiantoni, reported having been accosted upon alighting from their vehicles in the parking lot of the Elkridge Corners Shopping Center by a man brandishing a handgun and demanding their vehicles. Although Ms. Rudy refused, Ms. Hajiantoni complied, and the assailant fled the scene in Ms. Hajiantoni's recently purchased white Jeep Grand Cherokee.

Two days later, Detective William Vaselaros of the Baltimore County Police Department observed a white Jeep Grand Cherokee in the parking lot of the Swan Motel on Washington Boulevard, a location from which he had recovered a number of stolen vehicles. As it was unusual for a pricey vehicle to be in the parking lot of a cheap motel, Vaselaros suspected that the Jeep had been stolen. He learned from checking the Jeep's tags that it had been carjacked.

After radioing for backup units, Vaselaros approached the Swan's registration desk and learned that the Jeep was registered to Room 110. Upon arrival of the backup units, the officers approached Room 110, knocked on its door, and announced themselves. When appellant responded, the officers entered the room with weapons drawn. After checking the room for additional suspects, appellant was placed under arrest and a handgun was recovered from beneath the bed's mattress. Detective Vaselaros also found the keys to the Jeep, and a pouch containing several bullets in trousers belonging to appellant.

When appellant was placed under arrest and advised of his *Miranda*[1] rights, Detective Vaselaros inquired if he knew why he had been arrested. Appellant responded, "Yeah, for the handgun and because I'd been driving around in that Jeep."

Upon confirming the owner of the Jeep to be Ms. Hajiantoni, Detective Corporal Frank Dayhoff of the Howard County Police Department transported appellant to the station. At the station, appellant waived his *Miranda* rights, and admitted accosting Ms. Rudy and Ms. Hajiantoni.

At a suppression hearing, one of the Swan's employees testified that Room 110 had been registered to Kallie and Loucas Hajiantoni. Another of the Swan's employees testified that, although producing no identification, a white female had registered for Room 110. According to this witness, the white

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

female had arrived in a white Bronco, or Jeep-type vehicle driven by another person.

The parties proceeded to trial on an agreed statement of facts, including testimony from the suppression hearing. According to the agreed statement of facts, if called to testify, the victims would identify appellant as the person who had accosted them.

Ms. Rudy would have testified that appellant approached her after she had gotten out of and locked her vehicle, and he displayed a handgun in the waistband of his trousers. After appellant demanded Ms. Rudy's keys, she fled the scene.

On the other hand, Ms. Hajiantoni would have testified that, as she was alighting from her vehicle, appellant approached, brandished a handgun, and demanded the Jeep. After surrendering her purse and the Jeep's keys, Ms. Hajiantoni complied with appellant's order that she run from the scene. Appellant's fingerprints were later recovered from the Jeep, and the handgun recovered at the Swan was tested and found to be operable.

## I.

■ Appellant's motion to suppress was denied on alternative grounds: (1) appellant lacked standing to challenge the search and seizure of Room 110, and (2) exigent circumstances justified a warrantless search of Room 110. In order to resolve this appeal, we need address only the first of these grounds.

■ As it did here, if the State challenges a defendant's standing, "the burden of proof is allocated to the defendant to show his standing. The State has no obligation to show non-standing." *Coomes v. State,* 74 Md.App. 377, 392, 537 A.2d 1208, *cert. denied,* 313 Md. 8, 542 A.2d 845 (1988) (citations omitted). Unfortunately for appellant, he presented nothing whatever "to show his standing." *Id.* Indeed, only the State presented evidence that a white female had registered for Room 110 in the name of Ms. Hajiantoni, one of the victims.

Despite informing the police that he had engaged a prosti-
tute to register for Room 110, appellant presented no evidence
to that effect, or that the prostitute had permitted him to
occupy the room. As we have said, appellant "failed utterly"
to meet his burden of proof. *See Thompson v. State,* 62
Md.App. 190, 201, 488 A.2d 995, *cert. denied,* 303 Md. 471, 494
A.2d 939 (1985) ("All that came out at the suppression hearing
was that the room was registered to [a close friend of the
appellant]. The appellant clearly, on the facts made available
to [the suppression judge] before he was called upon to rule,
had demonstrated no proprietary interest in the motel room
itself"). Hence, the suppression judge was not clearly errone-
ous in concluding that appellant was without standing to
challenge the search and seizure of Room 110. *Joyner v.
State,* 87 Md.App. 444, 451, 589 A.2d 1330 (1991). There was
no error.

## II.

■ Appellant also contends that the evidence was insuffi-
cient to support his convictions for armed carjacking and
attempted armed carjacking. Our standard of review in con-
sidering the sufficiency of the evidence is "whether, after
viewing the evidence in the light most favorable to the prose-
cution, any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt." *State v.
Albrecht,* 336 Md. 475, 479, 649 A.2d 336 (1994) (citing *Jackson
v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560
(1979)).

Md. Ann.Code (1993, 1995 cum.supp.) Article 27, § 348A
provides:

(a) **Definitions.**—In this section, "motor vehicle" has the
meaning stated in § 11–135 of the Transportation Article.

(b) **Elements.**—(1) An individual commits the offense of
carjacking when the individual obtains unauthorized posses-
sion or control of a motor vehicle from another individual in
actual possession by force or violence, or by putting that

individual in fear through intimidation or threat of force or violence.

(2) An individual commits the offense of armed carjacking when the individual employs or displays a deadly or dangerous weapon during the commission of a carjacking.

(c) **Penalty.—In general.**—An individual convicted of carjacking or armed carjacking is guilty of a felony and shall be sentenced to imprisonment for not more than 30 years.

(d) **Same—Additional to other offenses.**—The sentence imposed under this section may be imposed separate from and consecutive to a sentence for any other offense arising from the conduct underlying the offenses of carjacking or armed carjacking.

(e) **Defenses.**—It is not a defense to the offense of carjacking or armed carjacking that the defendant did not intend to permanently deprive the owner of the motor vehicle.

Appellant seizes upon § 348A(b)'s use of the words "actual possession," and asserts that in Maryland carjacking occurs only when a vehicle is taken by force or threat of force *while in transit* or *while occupied.* Thus, appellant maintains that, although it would have been carjacking had Ms. Hajiantoni been stopped for a stop sign, or simply seated in the Jeep, as the offenses occurred as the victims had alighted from their vehicles, the evidence was insufficient to support his convictions for armed carjacking and attempted armed carjacking. We see it differently.

The Court of Appeals has observed in *Armstead v. State,* 342 Md. 38, 673 A.2d 221 (1996):

When construing a statute, our governing principle must be the Legislature's intent because, as we have consistently stated, the cardinal rule in statutory construction is to effectuate the Legislature's broad goal or purpose. *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994). The primary source of legislative intent is the language of the statute itself. *Rose v. Fox Pool,* 335 Md. 351, 359, 643 A.2d 906, 910 (1994). In reading the language, we apply common sense to avoid illogical or unreasonable construc-

tions, *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106, 112 (1994), and we ascribe to words their common meanings, unless the Legislature intended otherwise. *See Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991).

If the language alone does not provide sufficient information on the Legislature's intent, then courts will look to other sources to discern the Legislature's purpose. *Gargliano,* 334 Md. at 436, 639 A.2d at 678. Alternatively, if the language itself is clear and unambiguous and comports with the apparent purpose of the statute, there may be no need to consider other sources of information to glean the Legislature's purpose. *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). Because the meanings of even common words may be context-dependent, however, we often proceed to consider other "external manifestations of legislative intent," *Tidewater [/Havre de Grace] v. Mayor of Havre de Grace,* 337 Md. 338, 347, 653 A.2d 468, 472 (1995), such as the amendment history of the statute, its relationship to prior and subsequent law, and its structure. *Shah v. Howard County,* 337 Md. 248, 255–57, 653 A.2d 425, 428–29 (1995); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987).

*Armstead,* 342 Md. at 56, 673 A.2d 221.

Section 348A of Article 27 was enacted as chapter 69, Acts 1993, on 26 April 1993, and effective from the date of its enactment, following the brutal carjacking murder of Pamela Basu.[2] *See, e.g., Solomon v. State,* 101 Md.App. 331, 334, 646 A.2d 1064 (1994), *cert. denied,* 337 Md. 90, 651 A.2d 855 (1995) ("The consummated carjacking resulted in a first-degree murder as tragic and as vicious as any that the pages of these reports have ever been called upon to recount"); *Group W. Television v. State,* 96 Md.App. 712, 715 n. 3, 626 A.2d 1032 (1993) (". . . [T]he [Basu] case . . . served as the impetus for enactment of anti-carjacking legislation").

---

**2.** Section 348A was inserted in the provisions of Article 27 entitled LARCENY—LIVESTOCK, BOATS, OR VEHICLES.

Believing carjacking to be akin to robbery, the State points out in its brief what we said in *Hartley v. State,* 4 Md.App. 450, 243 A.2d 665 (1968), *cert. denied,* 395 U.S. 979, 89 S.Ct. 2136, 23 L.Ed.2d 768 (1969):

> Robbery is a crime against the person. *Clark and Marshall, Crimes* (6th Ed.), § 12.09 defines robbery as the felonious taking and carrying away of the personal property of another, from his person or *in his presence,* by violence, or by putting him in fear. The property taken need not be owned by the person robbed. *Actual possession* or custody is sufficient against the wrongdoer. Clark and Marshall, § 12.11; *Dyson v. Warden,* 1 Md.App. 469, 473, 231 A.2d 78 (1967). A charge of robbery may be sustained by proof that the property was forcibly taken from the care, custody, control, management or possession of one having a right superior to that of the robber. Robbery, 77 C.J.S., § 7. Here, ... the office manager ... was responsible for the money. *He was present when the office was robbed at gunpoint.* The lower court found that [the office manager] was properly named as the victim in the indictment and we agree.

*Hartley,* 4 Md.App. at 465, 243 A.2d 665 (emphasis added).

Thus, according to the State, Ms. Hajiantoni was in "actual possession" of her Jeep, as she was alighting from the Jeep when it was commandeered under threat of force or violence. We agree.[3] In this context, we believe the words "actual possession" simply clarify that a carjacking occurs when a vehicle is "forcibly taken from the care, custody, control, management or possession of one having a right superior to that of the" carjacker.[4]

Appellant counters that the "legislation ... prohibiting 'carjacking' was aimed at persons who hijack occupied motor

---

**3.** This applies equally to the attempted armed carjacking of Ms. Rudy's Ford Explorer.

**4.** Indeed, the carjacking of rental, or borrowed vehicles, appears to occur all too frequently in this and other states.

vehicles, as happened in the Basu case." Appellant's memory appears to be much too selective. To be sure, Dr. Basu was set upon while stopped at a stop sign, but she was not the only victim that fateful September morning. Indeed, Ms. Grace Lagana was accosted "as she stood by her open passenger door," and Ms. Laura Becraft was attacked after escorting "[her son's kindergarten classmate] out to her waiting automobile, put him in the passenger side, and started to return to the driver's side. . . ." *Solomon,* 101 Md.App. at 356, 359, 363, 646 A.2d 1064. Unbowed, appellant offers for our consideration a dictionary definition of "hijack":

> 1.a. To stop and rob (a vehicle in transit). b. To steal (goods) from a vehicle in transit. c. To seize control of (a moving vehicle) by use of force, especially in order to reach an alternate destination.

AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 854 (3rd ed.1992). While it is obvious that this definition suits appellant's purpose, had he delved into RANDOM HOUSE WEBSTER'S DICTIONARY 99 (1993), he would have discovered "carjacking" defined as "the forcible stealing of a vehicle from a motorist." In any event, § 348A(b) defines the term "carjacking," but not the words "actual possession." Consequently, dictionary definitions of "hijacking" and "car-jacking" are of no avail.

Because we agree with appellant that some significance must be given to the words "actual possession," *see, e.g., Atkinson v. State,* 331 Md. 199, 215, 627 A.2d 1019 (1993) ("[W]e will not read a statute to render any word superfluous or meaningless") (citation omitted), we believe the General Assembly intended the words "actual possession" as used in § 348A(b) to include situations such as those involving Ms. Rudy and Ms. Hajiantoni. Put another way, the victim need not actually be seated in, or operating the vehicle in order for a carjacking or attempted carjacking to be consummated. Rather, the victim need only be entering, alighting from, or otherwise in the immediate vicinity of the vehicle when an individual obtains unauthorized possession or control of the vehicle by intimidation, force, or violence, or by threat of force

or violence.[5]  Finally, the victim's right to the vehicle need be only superior to that of the perpetrator in order for a carjacking or an attempted carjacking to have occurred.  In so holding, we believe we have effectuated the General Assembly's broad remedial intention in enacting § 348A.

Consequently, we shall affirm the judgments of the circuit court.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**5.**  Since it is difficult to craft a rule covering every conceivable situation, we leave any such refinements for another day.