994 A.2d 469

**Alfred Jerome REEVES**

v.

**STATE of Maryland.**

**No. 1723 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

May 3, 2010.

278

282

Allison Pierce Brasseaux (Elizabeth L. Julian, Acting Public Defender, on the brief), Baltimore, MD for Appellant.

James E. Williams (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: DAVIS, ZARNOCH and FREDERICK J. SHARER (Retired, Specially Assigned), JJ.

 

ZARNOCH, Judge.

Appellant, Alfred Jerome Reeves, a resident of the District of Columbia, was tried by a jury in the Circuit Court for Prince George's County on charges of armed carjacking and related offenses. The jury found appellant guilty of carjacking, robbery, car theft, theft of goods with a value of over $500, second degree assault, and fleeing and eluding. The court originally sentenced appellant on August 29, 2008. Appellant filed a Motion to Correct Illegal Sentence, which was granted on May 20, 2009. Subsequently, the court sentenced appellant to 30 years' incarceration, with all but 10 years suspended, for the carjacking conviction, and to a concurrent 15 years' incarceration, all but 10 years suspended, for the robbery conviction. All other convictions were merged for the purposes of sentencing.

In this timely appeal, appellant presents three questions for our review, which we have slightly modified as follows:

1. Did the trial court violate appellant's right to be present at every stage of trial when it took the jury's verdict in appellant's absence without first conducting an adequate inquiry to ensure that his absence was voluntary?

2. Was the evidence insufficient to prove that appellant committed a carjacking and a robbery?

3. Was the evidence insufficient to prove that appellant was the person who committed the crimes?

For the reasons set forth below, we shall affirm the circuit court's judgments.

## FACTUAL AND PROCEDURAL HISTORY

On January 27, 2007, Joseph Durda, a man in his eighties, and his wife returned home from lunch and parked their 2001 Ford Windstar in the driveway of their Fort Washington home. Intending to wash the minivan, Durda briefly went into the house to change his clothes. He went to the garage and prepared the water and hose to complete the chore.

Deciding that he wanted to move the minivan to the middle of the driveway, Durda re-entered his home to retrieve his keys.

When Durda came back out, a stranger was standing in his garage. The man said, "I want your wallet and keys." Durda hesitated and responded, "What?" The man said, "I want your wallet and keys, or I'll shoot you." [1] The man then reached out and grabbed the keys from Durda's hand, quickly patted Durda down, then ran out the garage door and jumped in Durda's car. The man backed the car out of the driveway and took off down the road. Durda immediately called 911.

Durda testified that the man who accosted him was African–American and wore light blue jeans and a blue jacket. The man was of average height, about 5 feet 10 inches tall, and muscular. Durda guessed that the man was about 25 years old. Durda testified that the encounter lasted only ten to fifteen seconds. At trial, he identified appellant as the man who stole his vehicle. Durda also testified that he had seen and recognized appellant in the hallway and men's room of the courthouse prior to the commencement of the trial.

Officer Myron Young of the Prince George's County Police Department was on patrol when he heard the broadcast about a carjacking of a gray Ford Windstar van. Within five minutes of the call, Officer Young spotted the van and pulled out behind it. The van started "to run" and ran a red light, so Young activated his emergency lights. Young called in the van's tags to verify that it was the stolen vehicle. The van continued at a high rate of speed, at some points in excess of 100 miles per hour, and ran at least one more red light.

On Interstate 295, Officer Richard Leska joined the pursuit. The van attempted to evade the police by swerving around the police cars and going the wrong way on an exit ramp at high speed. The officers continued pursuing the van as it entered the District of Columbia. At some point, Young's police car

---

1. Durda testified that he never actually saw a gun in appellant's possession. Based upon his testimony, the court granted appellant's motion for judgment as to the charges of armed carjacking and robbery with a deadly weapon.

stalled. Leska, however, continued pursuing the van. When Young was able to restart his car, he continued in the direction that the van and Leska had gone, and soon saw Leska pursuing appellant on foot. Young joined the foot pursuit, eventually apprehending appellant on the porch of a house. At trial, Young identified appellant as the man he apprehended.

Officer Leska testified about his participation in the high-speed pursuit of the van. After a ten or fifteen minute chase, the driver of the van lost control and struck a tree or pole on the side of the road. Leska observed appellant, dressed in a blue jacket and blue pants, exiting the driver's side of the van. As he was running, appellant removed and dropped the blue jacket. Appellant ran around the back side of a nearby home, but was blocked by a fence. He then doubled back through the yard and ran three or four houses up the street before crossing the road and running up onto the porch of a house. Leska exited his car and pursued appellant on foot onto the porch. Appellant was out of breath when Leska caught him. Leska held appellant at gunpoint until Young arrived and placed appellant under arrest. Leska testified that he did not lose sight of appellant at any time during the foot pursuit. He also identified the blue jacket appellant had dropped during the pursuit, as well as a pair of gloves retrieved from just outside the front driver's side of the minivan.

Late that night, Detective Richardson met with the victim. Durda chose appellant's photo from an array and identified him as the perpetrator. Durda signed and dated the photo he recognized. On the back, Durda wrote in the comments section, "He resembles him." Durda testified that the intent of his written comment was that the man in the photo looked like the man who accosted him.

Appellant was arrested on January 27, 2007. He posted bond on July 26, 2007, and was released until trial.

Appellant's trial began on November 5, 2007. Appellant and his attorney were present during that entire day. The case went to the jury at 5:40 p.m. At 5:54 p.m., the court

dismissed the jury for the day, instructing them to return to continue deliberations at 9:00 a.m. the next morning. The judge also told the jurors that they would assemble in a different court room the next day. After the jury exited, the prosecutor asked, "Reassemble at 9:00?" The judge answered, "We'll just record what time they start their deliberations. It will take at least two hours or so at a minimum probably, so just make certain we know where you're at."

When the case was called the following day, November 6, 2007, at 11:20 a.m., appellant's absence was noted in the record. The following discussion then occurred:

THE COURT: It's 11:20, we have the attorneys present. [Prosecutor]? You can have a seat. [Defense Counsel].

[DEFENSE COUNSEL]: All I can represent is he's on his way. I don't know if the Court wants—

THE COURT: Have you had communication at all? I know yesterday he got here about ten o'clock or so.

[DEFENSE COUNSEL]: Right. I talked to his family members, and I actually finally got to him. He said he's on his way.

THE COURT: We're going to take the verdict in his absence. It's now 11:20. He was here yesterday when we told everyone that the jury would return at 9:00 today. Bring the jury in, please.

The jury was called, and it rendered the guilty verdicts. Appellant's attorney requested that the jury be polled. All of the jurors confirmed that they agreed with the verdict. The judge discharged the jury at 11:24 a.m. The judge then issued a bench warrant for appellant's arrest.

Appellant turned himself in on December 3, 2007. He was held without bail, and sentenced on August 29, 2008. At the sentencing hearing, appellant admitted that he was on the run from November 5, 2007, the day the verdict was rendered, until he turned himself in on December 3, 2007, at which time "[he] got sick and tired of running, and [he] had to surrender."

The prosecutor filed a Notice of Mandatory Sentence before the sentencing hearing, stating that appellant had previously been convicted of a crime of violence and requesting that appellant be sentenced to 30 years and not less than a mandatory 10–year sentence. At the sentencing hearing on August 29, 2008, the prosecutor said that appellant had previously been convicted of four robberies in Montgomery County and assault, but the prosecutor was unsure whether it was a felony or misdemeanor assault. Appellant and his counsel both mentioned appellant's history of bipolar disorder and drug abuse and said that he was in a program that was helping him with those problems. As noted, the court sentenced appellant to 30 years' incarceration, with all but 10 years suspended, for the carjacking conviction, and to a concurrent 15 years, all but 10 years suspended, for the robbery conviction. Although appellant filed post-trial motions, none raised the issues pressed here.

Additional facts will be provided as necessary.

## ANALYSIS

### I. Appellant's Absence

Appellant contends that the trial judge erred when he failed to conduct a reasonable inquiry to determine whether appellant's absence from court when the verdict was read was voluntary. Appellant further asserts that the court failed to make a necessary finding on the record that his absence was voluntary, and that the trial judge abused his discretion when he took the verdict in appellant's absence. He argues that his constitutional right to be present at every stage of trial was violated, and therefore his convictions must be reversed.

The State responds that appellant's claim should be rejected because he was represented by counsel, and both he and his attorney were present for the entire evidentiary part of the trial and jury instructions. The State further contends that appellant failed to adequately inform the trial court of his whereabouts when his trial resumed on November 6, 2007, in contravention of the judge's orders the previous evening.

Therefore, the State argues, the trial court properly exercised its discretion when it determined that appellant's absence was voluntary and allowed the jury to render its verdict.

 It is well established in Maryland that a criminal "defendant is entitled, as a constitutional right, under Maryland common law, and under Maryland Rule 4–231, to be present at trial." [2] *Collins v. State,* 376 Md. 359, 375, 829 A.2d 992 (2003) (citing *Pinkney v. State,* 350 Md. 201, 208–09, 711 A.2d 205 (1998)). As the Court of Appeals explained in *Brown v. State,* 272 Md. 450, 458, 325 A.2d 557 (1974) (citations omitted) (emphasis in original):

> Long before adoption of Maryland Rule [4–231][3] it was recognized that the accused has a right to be present at every *material* stage in the trial—the swearing of the witnesses, the presentation of the evidence, the charge to the jury, special instruction to the jury during its deliberation, and the rendition of verdict—else there could be no valid judgment against him.

The right of a criminal defendant to be present at all material stages of trial is embodied in Maryland Rule 4–231, which provides, in pertinent part:

> (a) **When presence required.** A defendant shall be present at all times when required by the court. . . .
>
> (b) **Right to be present—Exceptions.** A defendant is entitled to be present at a preliminary hearing and

---

2. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This right of confrontation, applicable to the states through the Fourteenth Amendment, *see Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), encompasses the right of a defendant in a criminal case to be present at every stage of the trial. *See Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Article 21 of the Maryland Declaration of Rights also requires that, "in all criminal prosecutions, every man hath a right . . . to be confronted with the witnesses against him."

3. In *Brown,* the court considered the former Maryland Rule 775, which is now embodied in the current revised rule.

every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248; or (3) at a reduction of sentence pursuant to Rules 4–344 and 4–345.

Although the current rule does not explicitly state that a defendant is entitled to be present at the rendering of a verdict, it provides that the right extends to "every stage of the trial." Former Rule 775 specifically provided that "[t]he accused shall be present . . . at every stage of the trial including the . . . return of the verdict." Indeed, in *Brown* the Court of Appeals said that the rendition of a verdict is a material stage of the trial at which the defendant is entitled to be present.[4] 272 Md. at 458, 325 A.2d 557.

■ The right to be present at trial is not absolute, however, and may be waived, as provided for in Maryland Rule 4–231(c):

**Waiver of right to be present.** The right to be present under section (b) of this Rule is waived by a defendant:

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

(2) who engages in conduct that justifies exclusion from the courtroom; or

(3) who, personally or through counsel, agrees to or acquiesces in being absent.

In *Pinkney*, a case where the defendant was absent for the entire trial, the Court of Appeals discussed at length the right of a defendant to be present at trial and the trial court's obligation to determine whether a defendant's absence is

---

**4.** Although Maryland Rule 4–231 reflects the dictates of the Confrontation Clause and Article 21 of the Maryland Declaration of Rights, we are not certain that this case, where appellant was present the entire trial except for the verdict and his attorney was present even at the verdict, implicates any constitutional rights. Rather, this appeal more appropriately raises an issue of whether Rule 4–231 and the court's obligation to reasonably inquire into appellant's absence were violated.

voluntary. 350 Md. at 213–24, 711 A.2d 205. The Court said
that the determination that a defendant's absence is voluntary
must be clearly established and will not be presumed. *Id.* at
214, 711 A.2d 205; *see also Haley v. State,* 40 Md.App. 349,
361, 392 A.2d 551, *cert. denied,* 284 Md. 744 (1978). As the
Court stated in *Pinkney,* 350 Md. at 217, 711 A.2d 205:

> If the trial court presumes waiver from a virtually silent
> record, and thus consciously proceeds in ignorance, then a
> lack of alternative explanations as to the defendant's pres-
> ence at the time of trial cannot support the finding of a
> knowing and voluntary waiver of the right to be present.

Although the Court declined to "set forth a litany which the
trial court must slavishly follow in order to establish that a
defendant's absence is knowing and voluntary," it stated that
"the record must reflect that adequate inquiry has been made
to ensure that a defendant's absence is not in fact involun-
tary." *Id.*

The Court then described the inquiry a trial court must
make to determine whether a defendant's absence is volun-
tary:

> [B]efore a court may find an agreement or an acquiescence
> to trial in absentia, the court must generally be satisfied of
> two primary facts: that the defendant was aware of the
> time and place of trial, and that the non-appearance was
> both knowing and sufficiently deliberate to constitute an
> agreement or acquiescence to the trial court proceeding in
> his or her absence. Usually, as in this case, the defendant's
> awareness of the time and place of trial will be easily
> established. Evidence, in the form of a summons or other
> document, will appear in the record to substantiate the
> State's burden of showing that the defendant was notified of
> the time and place of trial.
>
> In most cases, the more difficult question presented will
> be why the defendant is not in court. In determining
> whether a defendant's absence is truly voluntary, many trial
> courts have prudently taken investigatory measures before
> finding a waiver of the right to be present at trial. That

information could come in the form of a direct or indirect statement from the defendant; it could come from a statement by another person, or such information could come from other evidence that the defendant has, in fact, absconded. For instance, in *Barnett [v. State,* 307 Md. 194, 199–200, 512 A.2d 1071 (1986)], we noted with approval the trial court's efforts to locate the defendant by delaying the proceedings one day, questioning defense counsel as to the whereabouts of the defendant, and contacting area hospitals. A telephone call to the defendant's place of employment, if that information is available, would also be a prudent investigatory measure. *See also Sorrell v. State,* 315 Md. 224, 229 n. 2, 554 A.2d 352 (1989) (suggesting that it may be helpful for the trial court to contact the defendant's family).

*Id.* at 215–16, 711 A.2d 205 (some citations omitted).

The Court went on to note, *id.* at 216–17, 711 A.2d 205:

If, through such an investigation, the trial court discovers that the defendant could have appeared, but simply made a decision not to do so, the court may, of course, find a waiver of the right to be present from that affirmative information. More frequently, however, the court will not have an affirmative confirmation that the defendant's absence is voluntary, but will instead only possess information suggesting the non-existence of alternative explanations. If reasonable inquiry does not suggest that the defendant's absence was involuntary, and if the information before the court implicitly suggests no other reasonable likelihood of involuntary absence, the court may, as in *Walker [v. State,* 338 Md. 253, 658 A.2d 239, *cert. denied,* 516 U.S. 898, 116 S.Ct. 254, 133 L.Ed.2d 179 (1995)], draw the initial inference that the defendant's absence was a knowing one and was sufficiently deliberate so as to constitute an acquiescence to being tried in absentia.

The Court also stated that a criminal defendant who was found to have voluntarily waived his right to be present at trial must be afforded the opportunity to explain his absence at a subsequent hearing or sentencing. *Id.* at 217–18, 711

A.2d 205. Even if a trial court finds that a defendant waived his right to be present by voluntarily absenting himself, the court must inquire further before proceeding in his absence. *Id.* at 218, 711 A.2d 205.

The *Pinkney* Court also noted:

The discretion of the trial court to try an absent defendant should be exercised after a review of all the appropriate concerns and with the recognition that the public interest and confidence in judicial proceedings is best served by the presence of the defendant at trial. Other countervailing interests limiting the exercise of a trial court's discretion in such circumstances include the State's interests both in an accurate determination of guilt and in public confidence in the judiciary as an instrument of justice. Moreover, the defendant's presence "assures that the trial court is 'keenly alive to a sense of [its] responsibility and to the importance of [its] functions.' "

*Id.* at 218–19, 711 A.2d 205 (citations omitted).

According to the Court, the timing of the defendant's absence is a relevant factor:

[W]e believe that the commencement of trial *vel non* is a significant factor which properly informs the trial court as to whether to exercise its discretion to proceed with the trial of a criminal defendant after the court has found a voluntary relinquishment of the right to be present. Yet, we do not believe that the point at which the trial commences is a sacrosanct line of demarcation. Forbidding the trial of a defendant who absented him or herself prior to the commencement of trial, while allowing the trial of that same defendant to proceed if the absence had occurred one minute after the trial commenced, would impermissibly cede control of judicial administration to the criminal defendant, as well as encourage a defendant to abscond prior to trial if the defendant believes a guilty verdict is likely.

Recognition of the significance of the commencement of trial reflects the common sense notion that a defendant who is present on the day of trial would generally be aware of

the obligation to be present, and thus more culpable in his or her absence. In addition, once the trial has commenced, the State's interest in a timely conclusion to that trial significantly increases due to the expenditure of judicial and other resources.

*Id.* at 221–22, 711 A.2d 205 (citations omitted).

In this case, appellant contends that the court abused its discretion when it failed to conduct a proper inquiry as to the reason for appellant's absence before accepting the verdict. We first note that this argument may not be preserved. Before the court accepted the verdict, appellant's counsel apparently expressed concern that appellant's absence might affect the verdict and began requesting, "could the Court just minimize it and say he's——." In response, the judge responded that if the jury seemed to be affected by appellant's absence, he might send the jurors back to deliberate further. Counsel, however, never expressly objected to the court's acceptance of a verdict not influenced by the appellant's absence. Moreover, appellant failed to raise this issue in a post-trial motion or even mention it at the sentencing hearing. We have not found a Maryland case directly on point, but there is authority from other jurisdictions that a defendant waives the right to argue this issue on appeal if it was not raised in a post-trial motion as grounds for a new trial. *See* Annot., *Absence of Accused at Return of Verdict in Felony Case,* 23 A.L.R.2d 456, § 9 (1952, 2008) and cases cited therein. Nevertheless, since the State did not argue non-preservation and we have found no Maryland case directly addressing preservation in a situation like this, we shall address appellant's argument on its merits.

Although the trial judge did not conduct an extensive inquiry on the record into appellant's whereabouts and any reason for his absence, we believe the circumstances provided the judge a sufficient basis to conclude that appellant voluntarily failed to appear that day. Appellant was present during the entire one-day evidentiary, argument, and instruction portions of the trial. That evening, the judge instructed the jurors that they were excused until 9 a.m. the following morning, at which

time they would resume deliberations. The judge then indicated to counsel and appellant that they were not required to reassemble at 9 a.m., but said that deliberations would take at least two hours, "so just make certain we know where you're at." The next morning, at 11:20 a.m., two hours and twenty minutes after the jury was told to return, appellant was not in court. The judge asked defense counsel where appellant was, to which counsel answered, "All I can represent is he's on his way," and that he talked to appellant's family members and appellant, who said that he's on his way. The judge responded, "We're going to take the verdict in his absence. It's now 11:20. He was here yesterday when we told everyone that the jury would return at 9:00 today."

In *Pinkney,* the Court indicated that the presence of the defendant at one portion of trial, but his absence at another, would be a significant factor in the Court's determination of voluntariness. 350 Md. at 222, 711 A.2d 205. Other courts have found that a defendant's presence in court when informed of the date and time to return was sufficient evidence of voluntary absence. *See, e.g., People v. Davis,* 69 Ill.App.3d 548, 26 Ill.Dec. 543, 388 N.E.2d 167 (1979). Despite counsel's assertion that appellant said he was "on his way," appellant's absence two hours and twenty minutes after the jury was told to return, after having been instructed the previous evening to "make certain we know where you're at," was evidence from which the trial judge could conclude that appellant voluntarily failed to appear.

Other significant indicia pointed to a conclusion that appellant voluntarily failed to appear for the verdict. Appellant, a District of Columbia resident, was out on bail before and during the trial. He was charged with serious crimes, including carjacking and armed robbery, for which he faced stiff sentences if convicted. During the one-day trial, the carjacking victim described the ordeal and identified appellant as the perpetrator. Two police officers then testified about their pursuit and apprehension of appellant just a short time after the vehicle was stolen. Corporal Leska testified that Reeves exited and fled from the stolen minivan after crashing it, that

he never lost sight of Reeves during the chase, and that Reeves was out of breath when finally apprehended. Appellant did not present any evidence in his defense. Had appellant appeared for the rendering of the verdict, he was likely to be incarcerated immediately after having been convicted. After the guilty verdicts were rendered, the judge issued a bench warrant for appellant's arrest, an action expressing a clear belief that appellant—after having witnessed the strength of the State's case for guilt and facing likely incarceration—had fled. Therefore, although the trial judge did not conduct an elaborate inquiry on the record about appellant's whereabouts, the circumstances provided the judge a sufficient basis to conclude that appellant voluntarily failed to appear.[5]

Moreover, and quite significantly, appellant and his counsel expressly stated on the record at the sentencing hearing that appellant fled and was voluntarily absent from the rendering of the verdict. We have not found a Maryland case addressing the question of whether after-acquired knowledge by this Court or a trial court that a defendant's absence was voluntary can justify an earlier and perhaps questionable decision to proceed without the defendant. However courts in other jurisdictions have held that appellate courts may consider information that only became known in hindsight when reviewing a trial court's determination of voluntary absence of a defendant and decision to proceed with trial.

In *People v. Connolly*, 36 Cal.App.3d 379, 111 Cal.Rptr. 409, 411 (1973), at the close of the first day of Connolly's trial, at which he was present, he was ordered to appear the next day. Upon his failure to appear the next morning, the court con-

---

5. Although appellant argues that "the trial court made no finding whatsoever concerning the voluntariness of Mr. Reeves' absence," the judge stated on the record, "He was here yesterday when we told everyone that the jury would return at 9:00 today." In addition, there is persuasive out-of-state authority that there are occasions when a finding of voluntary absence may be inferred from the circumstances. *See United States v. Guyon*, 27 F.3d 723, 727 (1st Cir.1994); *State v. Chapman*, 358 A.2d 387, 389 n. 1 (Me.1976).

ducted a hearing to determine whether his absence was voluntary. *Id.* Connolly's wife and a neighbor testified that they were unable to find him, and neither the prosecutor nor defense counsel received a phone call from Connolly. *Id.* The trial court found that the defendant was voluntarily absent, and the trial proceeded. *Id.* On appeal, Connolly contended that there were insufficient facts before the trial court to establish that his absence was voluntary. *Id.* at 412.

The Court of Appeal of California said:

Unquestionably [the California statute allowing a trial to proceed when the defendant is voluntarily absent], was designed to prevent the defendant from intentionally frustrating the orderly processes of his trial by voluntarily absenting himself. A crucial question must always be, "Why is the defendant absent?" This question can rarely be answered at the time the court must determine whether the trial should proceed. Consequently, in reviewing a challenge to the continuation of a trial ..., it must be recognized that the court's initial determination is not conclusive in that, upon the subsequent appearance of the defendant, additional information may be presented which either affirms the initial decision of the court or demands that defendant be given a new trial. It is the totality of the record that must be reviewed in determining whether the absence was voluntary.

When looking to the initial proceedings involving the determination to proceed with trial, sufficient facts must be before the court to establish what reasonably appears to be a prima facie showing of voluntary absence. In the usual case a continuation of at least a few hours in order to locate defendant is appropriate. Once the defendant is again before the court he may challenge the propriety of proceeding in his absence. In this regard he can testify and present other evidence on the issue of whether his absence was in fact voluntary. On appeal the reviewing court must determine, on the whole record, whether defendant's absence was knowing and voluntary.

To look solely at the facts initially before the court would be patently unfair. If the facts initially before the court demonstrated a voluntary absence when in fact defendant was involuntarily absent, by defendant's reasoning, even when the truth was known, if the trial court refused to grant defendant relief, the reviewing court would be compelled to uphold the ruling. Such a result would be an abuse of the judicial process. The determination of the reviewing court must be based upon the totality of the facts; not just a portion of them.

*Id.* at 412–13 (citations omitted). The *Connolly* Court then concluded, based on both the facts before the trial court when it decided to proceed and those adduced at a subsequent hearing, that the defendant was voluntarily absent. *Id.* at 413–14.

*People v. Vargas,* 53 Cal.App.3d 516, 126 Cal.Rptr. 88, 92 (1975), is also instructive. Raymond Vargas was tried on charges of furnishing drugs to a 13–year old girl. Vargas was present for the first day of his trial, during which a jury was selected, and was ordered to appear the following day at 9:30 a.m., but was not present when the case commenced the next morning. At 9:55 a.m., the court consulted with the attorneys, and defense counsel said that he thought Vargas "took off because . . . he kept saying . . . the little girl might not show up," and "[j]ust as soon as she did show up . . . he said, 'I want to get my sport coat,' and he took off." *Id.* n. 2. Over defense objection, the court determined that Vargas was voluntarily absent and proceeded with trial, at which he was convicted. *Id.* More than two and half years after the trial, Vargas was found and arrested. *Id.* at 93. Vargas moved for a new trial, arguing that his absence from the trial was not voluntary. He appealed the court's denial of that motion, contending that the court acted precipitously and on insufficient evidence when it determined, during his trial, that his absence was voluntary. *Id.* at 94.

The California appellate court said:

While the question of the sufficiency of the showing on which the court acted to find that the defendant's absence was voluntary has a certain academic interest, it is obvious on the entire record that any error in the court's action on July 15, 1971, was not the cause of any prejudice to defendant, because the whole record reflects that any procrastination or delay in proceeding would have been unavailing, and that in fact the defendant's absence was not only voluntary but prolonged. To require a new trial under the circumstances of this case would put a premium on flight, and nullify the provisions of [the California Code allowing a trial to proceed when the defendant is voluntarily absent].

The *Vargas* court also noted, *id.*:

The fact that the defendant, who was on bail, had met all of his required court appearances, including the first day of trial at which the jury was selected, and had been present and left, not merely failed to appear, at the second day of trial permitted the court to conclude, both on July 15, 1971, and after defendant's apprehension, that the defendant's absence was voluntary. In *Taylor v. United States*, [414 U.S. 17, 20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973)], the [C]ourt observed, "It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, [citation], entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, 'that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.' [*U.S. v. Taylor*,] 478 F.2d [689] at 691 [C.A.1 1973]."

Other courts have also held that a court reviewing a trial court's decision to proceed in the absence of a defendant may consider evidence not available to the trial court at the time it made its decision. *Hudson v. State*, 128 S.W.3d 367, 375 (Tex.App.2004) (citation omitted) ("In most instances, the appellate court must determine, from hindsight, the validity of

the trial court's determination that the defendant's absence was voluntary."); *Gilbert v. State,* 182 Ind.App. 286, 395 N.E.2d 429, 431–32 (1979) (quoting and agreeing with *Connolly,* 36 Cal.App.3d 379, 111 Cal.Rptr. 409, and rejecting the argument that a trial court's determination of voluntary absence must be "made only upon the evidence then available").

We agree with these decisions and believe they reflect the direction of Maryland law foreshadowed by *Pinkney.* In *Pinkney,* after finding that the trial court erred in deciding to proceed with trial in the appellant's absence, the Court wrote:

> [I]f the court had fairly considered the explanation for Pinkney's absence, and believed that Pinkney had in fact suffered a seizure and that an ambulance had been called as a result, the court should have placed itself in the same position as if that information had been learned *before* proceeding with the trial *in absentia.* If a finding of waiver would have been inappropriate when the trial commenced, such a finding would have been equally inappropriate at the later point once the court learned the relevant information.

350 Md. at 224, 711 A.2d 205 (emphasis in original).

In short, hindsight already plays a role in this setting and in the operation of Md. Rule 4–231. We merely recognize that hindsight is a two-way street: while it can undercut a previous finding of voluntary absence, it can also validate one. On the basis of the above authority, we hold that evidence that a defendant's absence was voluntary that comes to light after a trial court proceeds in the defendant's absence may be considered in determining whether the trial court's decision was erroneous.

Here, where it is undisputed that appellant chose to flee, rather than appear in court to hear the verdict and face likely incarceration, it is clear that appellant, an out-of-state resident with a long criminal record, in fact voluntarily absented himself from the proceeding. Therefore, apart from the indicia upon which the trial judge apparently relied when proceeding with the rendering of the verdict, the evidence produced

subsequently unequivocally demonstrated that the court's decision to proceed was not erroneous.

■ We caution, however, that a trial court should not rely on the belief that hindsight or the fortuity of a defendant's flight will always justify an unwise decision to proceed in a defendant's absence without conducting sufficient inquiries into the voluntariness of the absence, as outlined by *Pinkney*, 350 Md. at 215–22, 711 A.2d 205. The *Vargas* Court, after affirming a trial court's decision to proceed *in absentia*, in part based on evidence that came to light subsequently, issued this warning:

> In affirming the action of the trial court on this point we do not give unqualified approval to the action of the trial court in summarily plunging ahead. The judge gambled and won. In *People v. Connolly, supra,* the court admonished, "When looking to the initial proceedings involving the determination to proceed with trial, sufficient facts must be before the court to establish what reasonably appears to be a prima facie showing of voluntary absence. In the usual case a continuation of at least a few hours in order to locate defendant is appropriate." Discretion may be the better part of valor in order to avoid the necessity of retrial in the event it is later determined that an excusable misunderstanding or emergency has occasioned the absence.

126 Cal.Rptr. at 95 (some citations omitted). We agree with the Court of Appeal of California's sound advice.

■ Finally, even if we were to hold that the trial court's failure to conduct a more extensive investigation into the voluntariness of appellant's absence and its decision to allow the verdict to be rendered in his absence were abuses of discretion, any error was harmless. An error is harmless if we are convinced beyond a reasonable doubt that the error in no way influenced the verdict. *Washington v. State*, 406 Md. 642, 656, 961 A.2d 1110 (2008); *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976). The Court of Appeals has applied the harmless error doctrine to cases involving a criminal defendant's absence from trial. *See Stewart v. State*, 334 Md.

213, 228, 638 A.2d 754 (1994) (stating that "the harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial"). Here, since the jury was not told during their deliberations that appellant would not be present for the rendering of the verdict, there is no way that his absence could have tainted the deliberative process. Indeed, it appears that the trial court, recognizing that such knowledge could be prejudicial to appellant, would have been receptive to a motion that the jury be given a limiting instruction and sent back to continue deliberations if it appeared that appellant's absence affected the verdict. Furthermore, appellant's attorney was present during the whole trial and the rendering of the verdict. *See Pinkney,* 350 Md. at 223–24, 711 A.2d 205 (noting that the presence of counsel was of "great significance" in determining whether it was appropriate to proceed with trial in the defendant's absence). Appellant's attorney requested that the jury be polled, and the jury was in fact polled on the record, on whether they agreed with the verdict. Even if appellant were present, it is difficult to imagine what more he could have done.

Moreover, and quite significantly, any error in the court's process of determining whether appellant's absence was voluntary was harmless because appellant was in fact voluntarily absent. Had the court conducted a more thorough investigation into appellant's whereabouts, or had the court decided to delay trial for some time to make additional inquiries, it soon would have become apparent that appellant's absence was voluntary. Lastly, the evidence of appellant's guilt was overwhelming. Therefore, we conclude that any possible error was harmless.

## II. Sufficiency of Evidence of Carjacking and Robbery

Appellant contends that the evidence was insufficient to support his carjacking and robbery convictions. He argues that the evidence was insufficient to prove carjacking because the victim was not in actual possession of the vehicle at the time appellant stole it. He asserts that the evidence

was insufficient to prove robbery because the vehicle was not taken from the victim's person or presence.

The standard for our review of the sufficiency of the evidence to support a criminal conviction is whether, based upon the evidence presented, taken in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted). The fact-finder "possesses the ability to choose among differing inferences that might possibly be made from a factual situation," and the appellate court "must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference." *State v. Suddith*, 379 Md. 425, 430, 842 A.2d 716 (2004) (citations, quotations, and footnote omitted).

Carjacking is prohibited by Md.Code (2002), Criminal Law Article, § 3-405(b)(1), which provides:

An individual may not take unauthorized possession or control of a motor vehicle from another individual *who actually possesses the motor vehicle*, by force or violence, or by putting that individual in fear through intimidation or threat of force or violence.

(Emphasis added).

In *Mobley v. State*, 111 Md.App. 446, 681 A.2d 1186 (1996), in examining the statutory predecessor to Section 3-405, this Court defined "actual possess[ion]" for purposes of carjacking. In *Mobley*, the victim was approached by the armed defendant after exiting her vehicle and locking the doors. *Id.* at 450, 681 A.2d 1186. This Court rejected the defense's contention that "carjacking occurs only when a vehicle is taken by force or threat of force *while in transit or while occupied.*" *Id.* at 452, 681 A.2d 1186 (emphasis in original). Instead, we held that the words "actual possession" in the statute meant that a carjacking occurs when a vehicle is "forcibly taken from the care, custody, control, management or possession of one having a right superior to that of the carjacker." *Id.* at 454, 681

A.2d 1186 (footnote and internal quotations omitted). *Mobley* noted:

> [T]he victim need not actually be seated in, or operating the vehicle in order for a carjacking or attempted carjacking to be consummated. Rather, the victim need only be entering, alighting from, or *otherwise in the immediate vicinity of the vehicle* when an individual obtains unauthorized possession or control of the vehicle by intimidation, force, or violence, or by threat of force or violence.

*Id.* at 455–56, 681 A.2d 1186 (Emphasis added).

In *Price v. State*, 111 Md.App. 487, 681 A.2d 1206 (1996), decided one day after *Mobley*, this Court again focused on the issue of the victim's possession and control of her car in a carjacking. In *Price*, the defendant approached the victim from behind while she was standing alongside the hood of her car at the locked front gate of a storage facility. *Id.* at 491, 497, 681 A.2d 1206. We said:

> When one is charged with carjacking, we are not concerned with the victim's dominion and control over the vehicle except insofar as such possession is interrupted by an act of intimidation or violence on the part of an actor bent on wresting possession from the operator of the vehicle. In other words, the *actus reus* of carjacking has nothing to do with the possession by the victim of the vehicle. The only significance of the relationship between the victim and the vehicle at the time of the carjacking is in permitting a determination of whether the actor perpetrated a crime against person, i.e., carjacking, or a crime against property, i.e., theft.... Thus, we are concerned here not with imputing criminal responsibility, but rather with whether the defendant's actions constituted forcible taking of the vehicle or a simple theft thereof.

*Id.* at 499, 681 A.2d 1206. This Court then concluded that the victim's vehicle was so within her reach, inspection, observation and control, that she could have, if not overcome by violence or prevented by fear, retained her possession of it. *Id.*

In Maryland, robbery is "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." *Smith v. State*, 412 Md. 150, 156 n. 1, 985 A.2d 1204 (2009) (citations and quotations omitted).[6] In *State v. Colvin*, 314 Md. 1, 20, 548 A.2d 506 (1988) (citations omitted), the Court of Appeals discussed the criminal component that the property be taken from the person or presence of the victim:

> Robbery convictions have been sustained where the victim was in one room of a house or place of business and the property was taken from another room. Indeed, convictions have been sustained where the victim was in a building and personalty kept outside the building was taken.

This Court has similarly held:

> The words "from his person or *in his presence,*" as used in the common-law definition of robbery, make plain that the property taken need not be in the victim's physical possession; rather, it need only be taken *in his presence, i.e.,* within the victim's immediate control or custody.

*Hayes v. State*, 123 Md.App. 558, 566–67, 720 A.2d 6 (1998), *rev'd on other grounds*, 355 Md. 615, 735 A.2d 1109 (1999) (emphasis in original).

In this case, Durda testified that his minivan was parked in the driveway of his home. When he left his home via the garage to move the vehicle to the center of his driveway in order to wash it, appellant approached and demanded that Durda give him his wallet and keys or else he would shoot him. Appellant then grabbed the keys from Durda's hand, patted him down, and ran out of the garage to the van. When asked how far away the minivan was at the time, Durda

---

**6.** In fact, to constitute robbery, the property need not be taken from the owner. It may be taken from someone who had custody over the property and who had a legal interest or special property interest in the goods. *Tyler v. State*, 5 Md.App. 158, 162, 245 A.2d 592 (1968). Indeed, a charge of robbery may be sustained by proof that the property was forcibly taken from the care, custody, control, management or possession of any person having a right superior to that of the robber. *Hartley v. State*, 4 Md.App. 450, 465, 243 A.2d 665 (1968).

estimated that it was about twenty-two feet away. Durda was thus in the immediate vicinity of and walking to his vehicle when appellant approached, intimidated the victim with threats of violence, grabbed the car keys from his hand and then took off with the car. The vehicle, and indeed the keys to start its engine, were within Durda's control, such that if he had not been overcome by fear and violence, he would have maintained control over the vehicle. *See Price*, 111 Md.App. at 499, 681 A.2d 1206. The evidence was therefore clearly sufficient to support the carjacking conviction. The vehicle was also sufficiently within the victim's control and custody to constitute robbery.

### III. Sufficiency of Identification Evidence

Lastly, appellant questions the accuracy of Durda's identification of appellant. He emphasizes that it was based upon an incident that only lasted 10 to 15 seconds and contained some very general and inaccurate statements. For example, Durda was unable to describe appellant's hair length and stated that his assailant was twenty-five years old, while appellant was thirty-five. Additionally, appellant claims that the identification was questionable because Durda wrote on the back of the photo array that the picture of appellant "resemble[d]" the carjacker.

We believe this argument is not preserved. "It is well-settled that an appellate court ordinarily will not consider any point or question 'unless it plainly appears by the record to have been raised in or decided by the trial court.'" *Robinson v. State*, 404 Md. 208, 216, 946 A.2d 456 (2008) (quoting Md. Rule 8–131(a)). The primary purposes of the rule are:

(a) to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings, and (b) to prevent the trial of cases in a piecemeal fashion, thus accelerating the termination of litigation.

*Fitzgerald v. State,* 384 Md. 484, 505, 864 A.2d 1006 (2004) (citations and quotations omitted).

Moreover, in the context of motions for judgment of acquittal, Maryland Rule 4–324(a) provides:

A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. The defendant shall state with particularity all reasons why the motion should be granted. . . .

 Maryland law is clear that, on appeal, an appellant's sufficiency arguments are limited to the specific grounds stated in his motion for judgment at trial. *See Taylor v. State,* 175 Md.App. 153, 159–60, 926 A.2d 805 (2007). Here, appellant's attorney moved for judgment at the conclusion of the State's case and offered specific arguments challenging various aspects of the charges against appellant. However, he did not make the argument advanced here.

 Moreover, even if this argument were preserved, the evidence presented at trial was clearly sufficient for a reasonable trier of fact to conclude, beyond a reasonable doubt, that appellant committed the crimes with which he was charged. It is the well-established rule in Maryland that the testimony of a single eyewitness, if believed, is sufficient evidence to support a conviction. *See, e.g., Walters v. State,* 242 Md. 235, 237–38, 218 A.2d 678 (1966). In this case, there was substantially more than an in-court identification by a single eyewitness. Durda testified that he came face-to-face with his assailant in his garage. He immediately called 911 after his minivan was stolen and gave a description of his assailant. Later that evening, Durda identified appellant from a photo array. At trial, Durda identified appellant as the man who stole his vehicle. He also testified that he had seen and recognized appellant in the hallway and men's room of the courthouse prior to the commencement of the trial.

Two police officers also provided testimony identifying appellant. Less than five minutes after Durda called 911, Detec-

tive Young observed a man matching Durda's description driving Durda's minivan. Young pursued the minivan in a high-speed chase, never losing sight of the van until his car stalled. Upon restarting his vehicle, Young continued the pursuit, found Durda's van, and assisted in the apprehension of appellant, whom he identified at trial. Corporal Leska also participated in the high-speed chase. Never losing sight of the van, he pursued the vehicle until it crashed into a pole or tree. Leska observed appellant exit the stolen van. A brief foot chase ensued, during which Leska chased appellant on foot, never losing sight of appellant, and apprehended him, breathing heavily, on the porch of a nearby house.

Ultimately, it is the responsibility of the jury to determine the credibility of witnesses and to resolve conflicting testimony. *Johnson v. State,* 156 Md.App. 694, 714, 848 A.2d 660 (2004). To the extent that Durda's and the officers' identifications of appellant were allegedly vague or inaccurate, the jury accepted their testimony, and we will not disturb that determination.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**